IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RANDOLPH GLENN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-4446-N |
| | § | |
| OFFICER BUNTHAVUTH TE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Defendant Bunthavuth Te's motion for summary judgment on qualified immunity [Doc. 16]. Because the Court finds that genuine fact issues preclude summary judgment, the Court denies the motion.[1]

### I. THE SHOOTING

On the night of February 2, 2012, an individual flagged down two Dallas Police Department ("DPD") officers to tell them he had been robbed and that the suspect was in the process of robbing another individual.[2] The officers found the suspect, Donnell Collins, seated in a vehicle with the second robbery victim. Collins aimed a gun at the officers. The two officers fired their weapons at the vehicle. The officers wounded Collins. Collins drove

---

[1]This Order also addresses Plaintiff Randolph Glenn's motion to quash the deposition of Glenn [12]. The Court denies the motion as moot.

[2]The Court draws these alleged facts from the parties' briefs and summary judgment evidence.

ORDER – PAGE 1

the vehicle a distance away, abandoned it, and fled on foot. The officers began to pursue Collins.

The officers requested assistance and provided a description of Collins. The DPD dispatch described the suspect as a heavyset, black male wearing a white t-shirt and green beanie. *See* Glenn Resp., Ex. C [hereinafter, Incident Report]. The dispatch stated that he would be armed. *Id.* DPD Officers Te and Tyler Mills, who received the dispatch, subsequently recalled the description of the suspect as "a black male wearing green pants with a possible limp." *See* Te Mot., Ex. 1 1 [17-1] (hereinafter, Te Aff.]; *id.*, Ex. 2 1 [hereinafter, Mills Aff.]. According to arrest records, Collins was 6'1" tall, 240 pounds, and 29 years old at the time of the incident. *See* Glenn Resp., Ex. E [hereinafter, Collins Arrest Report].

Soon after receiving the dispatch, Te and Mills came across Glenn, who was walking near the location where Collins was first stopped. Glenn is a 53 year old black male and was wearing a green, long-sleeved jumpsuit with pockets. *See* Glenn Resp., Ex. I 34 [hereinafter, Glenn Depo.]. Crime scene photos indicated that the jumpsuit was zipped up over a gray t-shirt. *See* Glenn Resp., Ex. D 2 [hereinafter, Seyster Aff.]. Te later remembered Glenn's t-shirt as white. *See* Glenn Resp., Ex. H 49 [hereinafter, Te Depo.]. Though both officers recalled the original dispatch including the statement that the suspect was limping, the dash cam video indicates that the "limping" description was not issued until after the officers had already stopped Glenn. *See* Seyster Aff. 2. Glenn testified that he was not limping. *See* Glenn Depo. 16.

The officers observed Glenn walking toward a Nissan Pathfinder. *See* Te Aff. 1–2; Mills Aff. 1–2. They pulled over their vehicle. *Id.* The officers testified that Glenn saw their vehicle and began to walk away from them. *Id.* Te exited the police vehicle with his gun drawn. *See* Te Depo. 41. One of the officers shouted "Come here!" and "Get on the ground!" *See* Seyster Aff. 2. Te testified that Glenn did not respond and he saw Glenn reach into his pocket; Te fired his weapon. *See* Te Aff. 2. Te testified that he was approximately twelve feet away from Glenn when he fired his weapon. *See* Te Depo. 66–67. After the gunshot, one of the officers shouted "Get on the ground!" two more times. *See* Seyster Aff. 2.

According to the dash cam video, Officer Te exited the vehicle at 21:52:57 and fired his weapon at 21:53:02, approximately five seconds later. *See* Seyster Aff. 2. Te recalled that he and Officer Mills told Glenn to stop and show his hands ten to fifteen times and estimated that it took 20 seconds to one minute between the time he exited the vehicle and the time he fired his weapon. *See* Te Depo. 41. Te testified that he was in fear for his life at the time. *See id.* at 59. Mills testified that he was not in fear for his life. *See* Glen Mot., Ex. J 23 [hereinafter, Mills Depo.]. Mills also testified that, just before Te fired his weapon, Glenn had one hand in the air "[l]ike 'I give up' " and the other in his pocket. *Id.* Glenn testified that his hand was not in his pocket. Glenn Depo. 46.

After shooting Glenn, Te called for an ambulance. *See* Te Depo. 84–85. Te discovered that Glenn was not armed and that he was not the suspect. *Id.* Glenn testified

later that he sometimes has difficulty hearing and that he did not hear the officers shout at him that night. *See* Glenn Depo. 16–18.

Glenn filed suit in state court, asserting claims of excessive force, unreasonable detainment and arrest, and gross negligence against Te.[3] Te removed the case to this Court and now moves for summary judgment on qualified immunity.[4]

## II. STANDARD FOR SUMMARY JUDGMENT

A trial court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, a court must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted).

---

[3]Glenn also asserts claims against the City of Dallas, but these claims are not at issue in the instant motion.

[4]In the same motion, Te also asks the Court to dismiss Glenn's claims for failure to state a claim. The Court denies the motion to dismiss as moot in light of Glenn's amended complaint [33].

When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "conclusory allegations, speculation, and unsubstantiated assertions" will not satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Indeed, factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. STANDARD FOR QUALIFIED IMMUNITY

"Qualified immunity is a defense available to public officials performing discretionary functions '. . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Noyola v. Texas Dep't of Human Res.*, 846 F.2d 1021, 1024 (5th Cir. 1988) (quoting *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982)).  The doctrine of qualified immunity balances two interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Because "qualified immunity is designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law,' " denial of qualified immunity is appropriate only in rare circumstances.  *Brady v. Ford Bend Cnty.*, 58 F.3d 173, 173–74 (5th Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To resolve a public official's qualified immunity claim, a court considers two questions.  First, has the plaintiff shown a violation of a constitutional right?  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  And, second, was the right "clearly established" at the time of the public official's alleged misconduct?  *Id.*  The second inquiry is critical: unless the official violated a clearly established constitutional right, qualified immunity applies.  *Pearson*, 555 U.S. at 231.  "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 235.  "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment."  *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

## IV. GLENN HAS RAISED ISSUES OF FACT AS TO THE ALLEGED CONSTITUTIONAL VIOLATION

Glenn alleges that Te violated his constitutional rights by (1) unreasonably stopping, detaining, and arresting him and (2) using excessive force in the course of his arrest. For both claims, "the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan*, 134 S. Ct. at 1865 (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Thus, both are "subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). To evaluate the constitutionality of a seizure, whether by arrest or by use of deadly force, courts " 'balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the government's interests alleged to justify the intrusion.' " *Id.* (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). "This balancing test 'requires careful attention to the facts and circumstances of each particular case.' " *Flores v. City of Palacios*, 381 F.3d 391, 398–99 (5th Cir. 2004) (quoting *Graham*, 490 U.S. at 396).

### A. *Unreasonable Stop, Detention, and Arrest*

First, Glenn challenges the constitutionality of the officers' conduct in stopping and detaining him. In *Terry v. Ohio*,[5] the Supreme Court "created a limited exception to [the general rule that officers must have probable cause to seize a person]: certain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime." *Florida v. Royer*, 460 U.S. 491, 498 (1983). An

---

[5]392 U.S. 1 (1968).

"articulable" or "reasonable" suspicion exists if the officer can " 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' a belief that his safety or that of others is in danger." *United States v. Brignoni-Ponce*, 422 U.S. 873, 880 (1975) (quoting *Terry*, 392 U.S. at 21). "The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." *Florida v. J.L.*, 529 U.S. 266, 271 (2000).

The basis for Te and Mills to stop Glenn was a broadcasted description of a suspect in an armed robbery. The actual dispatch described a heavyset black man wearing a white t-shirt and green beanie. The dispatch was updated to include that the suspect was limping. Glenn contends that the only similarities between him and the suspect was that both are black and male and were in approximately the same vicinity. Otherwise, he did not match the description: he was not heavyset, and he did not wear a white shirt or a green beanie. The parties dispute whether Glenn was limping. But Te and Mills recall hearing a description different from the one issued. Te and Mills testified that they were looking for a black male wearing green pants with a possible limp, though they disagree whether the description included the fact that the suspect wore a white shirt. As Glenn was wearing a green jumpsuit, he more closely fits the description that the officers' testified they received. But, as Glenn points out in his response, the description of the suspect limping may not have been released until after the officers had already stopped him, which raises questions as to their recollection of the description of the suspect and the extent to which it served as a basis for their stop.

Courts "agree that race, when considered by itself and sometimes even in tandem with other factors, does not generate reasonable suspicion for a stop." *United States v. Swindle*, 407 F.3d 562, 569–70 (2d Cir. 2005) (holding that the fact that an individual "was simply a black man in a high-crime area driving a car that the wanted fugitive had previously been seen 'near'" did not generate a reasonable suspicion); *see also Brignoni-Ponce*, 422 U.S. at 885–86 ("In this case the officers relied on a single factor to justify stopping respondent's car: the apparent Mexican ancestry of the occupants. We cannot conclude that this furnished reasonable grounds to believe that the three occupants were aliens."); *United States v. Rias*, 524 F.2d 118, 121 (5th Cir. 1975) (finding no reasonable suspicion to stop and detain two men in a car for a robbery where the only description of the suspects was that they were black and male).

But Te and Mills have also provided specific and articulable facts, albeit based on a mistaken description, that, if true, could make their suspicion reasonable. *See Terry*, 392 U.S. at 36 n.3 ("Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability."); *United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003) ("An officer's mistake of fact may provide the objective basis for reasonable suspicion or probable cause under the Fourth Amendment because of the intensely fact-sensitive nature of reasonable suspicion and probable cause determinations." (quoting *Ornelas v. United States*, 517 U.S. 690, 695–96 (1996))). Because of the differences

between the broadcasted description and the description the officers testified they heard, the Court holds there is a genuine issue of fact that prevents it from finding as a matter of law that the officers had a reasonable suspicion to stop and detain Glenn.

### *B. Excessive Force*

Second, Glenn argues that Te used excessive force by shooting Glenn in the leg. To succeed on his excessive force claim, Glenn must show that (1) he suffered an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)). The parties agree that Glenn suffered an injury within the meaning of this test and that the injury resulted directly and only from Te firing his weapon at Glenn. Thus, the remaining question before the Court is whether the force was excessive to the need and objectively unreasonable.

To determine whether a use of force is reasonable, the Court asks "whether the totality of the circumstances justified [that] particular sort of search and seizure." *Garner*, 471 U.S. at 8–9. The Court finds that Te used deadly force when he fired his gun at Glenn. *See Gutierrez v. City of San Antonio*, 139 F.3d 441, 446 (5th Cir. 1998) ("Deadly force" is force that "carr[ies] with it a substantial risk of causing death or serious bodily harm." (quotation omitted)). "An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (citing *Mace v.*

*City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)). Conversely, it is "objectively unreasonable to use deadly force 'unless it is necessary to prevent [a suspect's] escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.' " *Flores*, 381 F.3d at 399 (citing *Garner*, 471 U.S. at 3).

The facts on record show that, at the time of the shooting, Te believed Glenn to be a suspect in an armed robbery, which supports his testimony that he feared for his life at the time of the shooting. But several factual disputes preclude summary judgment on this issue. First, there is a threshold question of whether Glenn actually matched the description of the suspect other than being black and male, which goes to the reasonableness of the officer's belief that he had stopped the suspect. Second, the testimony of the officers and evidence from the dash cam video differ as to the number of times the officers shouted at Glenn to get down and the amount of time he had in which to comply with their instructions. Third, there is conflicting evidence as to the position of Glenn's hands before he was shot. Te testified that he feared for his life because he saw Glenn reach into his pocket. Mills testified that Glenn appeared to raise one hand as if surrendering. Mills also testified that he did not perceive a threat. And Glenn testified that his hand was not in his pocket at the time he was shot. Fourth, there is a discrepancy between the dash cam video and the testimony of the officers as to whether Glenn was instructed to show his hands. Finally, Glenn did not appear to attempt to flee. If neither officer instructed Glenn to show his hands and Glenn appeared to surrender, it would not be objectively reasonable for Te to use deadly force against Glenn.

*See Hemphill v. Scott*, 141 F.3d 412, 417 (2d Cir. 1998) (holding that shooting a suspect, even though suspected of violent crimes, was objectively unreasonable where suspect had stopped and raised his arms). Based on this conflicting evidence, the Court holds that factual disputes preclude summary judgment on this claim.

### V. THE RIGHT WAS CLEARLY ESTABLISHED

A right is "clearly established under the second step of the qualified immunity analysis" if " 'the contours of that right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Flores*, 381 F.3d at 399–400 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). " '[T]he salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.' " *Tolan*, 134 S. Ct. at 1866 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

The Court notes that the "operation of this standard . . . depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Creighton*, 483 U.S. at 639. Though, on an abstract level, each individual has a clearly established fourth amendment right to be free of unreasonable searches and seizures, a "test of 'clearly established law' . . . applied at this level of generality . . . would bear no relationship to the 'objective legal reasonableness' " portion of the test. *Id.* "Plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* Accordingly, the allegedly violated right

must be more particularized. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

The two rights at issue here are Glenn's rights not to be unreasonably detained and to be free of excessive force. Both are clearly established rights, even when narrowly defined to the context of this case. It is clearly established in 2012 that race alone is not a sufficient basis to stop or detain a suspect; something more is necessary. *Brignoni-Ponce*, 422 U.S. at 885–86; *Rias*, 524 F.2d at 121. It was also clearly established that an officer's use of deadly force is objectively unreasonable if a reasonable officer would not have believed the suspect posed a threat to the officer. *Sanchez v. Fraley*, 376 F. App'x 449, 453 (5th Cir. 2010) ("[I]t was clearly established well before that date that deadly force violates the Fourth Amendment unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." (quotations omitted)); *Bazan v. Hidalgo Cnty*, 246 F.3d 481, 488 (5th Cir. 2001) (same). Drawing all reasonable inferences in favor of Glenn, the Court could find that Te lacked a reasonable suspicion that Glenn was the suspect in the armed robbery and that Te shot Glenn without probable cause to believe that Glenn posed a threat. Because there are genuine issues of fact as to whether Te violated Glenn's constitutional rights and because the law protecting those rights was clearly established at the time of the incident, the Court cannot grant qualified immunity at this stage of the case.

## CONCLUSION

For the foregoing reasons, the Court denies Te's motion.

Signed August 22, 2014.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 14